## B. B. COMBS v. E. W. BRICKHOUSE.

(Filed 30 September, 1931.)

**Easements C a—Easement may be terminated by executed parol agreement of parties.**

The lower proprietor of lands must show a right of easement in the drainage ditches on the land of the upper proprietor by written grant or prescription, but an abandonment may be shown under verbal agreement evidenced by acts of the parties showing an unequivocal intent to that effect, and testimony in this case was sufficient to be submitted to the jury to the effect that the upper proprietor stopped up certain drainage ditches on his land several times whereupon the lower proprietor as often cleared them out, the action being brought by the latter to restrain the former from continuing to obstruct the flow of water therein. *Semble:* by reference to answers to certain issues the right of easement was by prescription in this case.

CIVIL ACTION, before *Grady, J.,* at April Term, 1931, of TYRRELL.

The evidence tended to show that the Spruill farm was one tract of land containing approximately 300 acres. The farm was drained by twenty-one ditches running from north to south, draining into a canal on the south side of the tract. Afterwards the farm was divided into three tracts of approximate equality in acreage. J. B. Williams became

the owner of the upper third, plaintiff, B. B. Combs, the owner of the middle third, and the defendant, Brickhouse, the owner of the lower third. By reason of certain litigation Williams, the owner of the upper third, constructed on the southern side of his tract a cross ditch running from east to west, and dammed up all the ditches north of the middle tract. Thereafter, the plaintiff Combs constructed a ditch running from east to west along the line of the middle tract and dammed up all of said ditches north of the third or lower tract except three. These three ditches were thus left and they crossed the land of the defendant. In the spring of 1930, the defendant dammed up said three ditches and the plaintiff reopened them. Whereupon, the defendant dammed them up again, and the plaintiff again reopened said ditches and instituted this action to restrain the defendant from further interfering and filling up said ditches.

The defendant offered evidence tending to show that when the plaintiff cut the ditches from east to west on the middle tract owned by him, that he agreed with the grantor of the defendant, the owner of the lower tract, that said ditches could be filled up and eliminated. The verbal agreement was stated by one witness for the defendant as follows: "Plaintiff told me it was agreed that the different owners of the Spruill farm were each going to take care of the water falling on his respective tract and told me to dam up all of the ditches on his tract where they entered said new ditch, as he (plaintiff) was going to take care thereafter of the water which fell on his land."

The following issues were submitted to the jury:

1. "Have the three ditches in question been opened and used for drainage purposes of the lands in question for more than 20 years next before the commencement of this action?"

2. "Were said ditches open and being so used for drainage purposes at the time the defendant purchased the lands to the south of the plaintiff's tract?"

3. "Has the defendant wrongfully filled up and dammed said ditches so as to interfere with or impede the natural flow of the waters from the lands of the plaintiff, over and across the lands of the defendant?"

4. "If so, what damages is the plaintiff entitled to recover of the defendant for said wrongful act?"

The jury answered the first issue "Yes"; the second issue, "Yes, two of them"; the third issue "Yes," and the fourth issue "one cent."

The court instructed the jury to answer the first and second issues as indicated by the verdict, and further instructed the jury: "If you believe the evidence and find the facts to be as it tends to show, even from the testimony of defendant and his witnesses, you will answer the third issue, yes."

From judgment upon the verdict continuing the injunction, the defendant appealed.

*M. B. Simpson for plaintiff.*
*Thompson & Wilson for defendant.*

BROGDEN, J. Does a parol agreement to eliminate drainage ditches, made by the owners of the dominant and servient estates, constitute evidence of an abandonment or relinquishment of a drainage easement imposed upon the servient estate?

An easement is an interest in land, and the creation thereof by grant is governed by the statute of frauds. C. S., 988. *Davis v. Robinson,* 189 N. C., 589, 127 S. E., 697; *Clark v. R. R.,* 192 N. C., 280, 135 S. E., 26; *Gruber v. Eubank,* 197 N. C., 280, 148 S. E., 246.

The facts in this case, however, involve the abandonment or relinquishment of an easement rather than the creation thereof. Apparently the cause was tried upon the theory that the abandonment of an easement is also within the statute of frauds and therefore to be evidenced by writing. *Faircloth, C. J.,* in *Adams v. Battle,* 125 N. C., 152, 34 S. E., 245, wrote as follows: "It was an iron-clad maxim of the common law that an obligor would only be released by an instrument of as high dignity as that by which he was bound, that is, being obligated by a seal he could be released only by an instrument under seal. Technically, this is the rule of modern times, unless changed by statute, but practically it is seldom enforced. To this rule, the exceptions were and are so numerous that seldom can the rule be applied."

The record does not disclose, unless by reference to the first issue, whether the drainage easement was originally acquired by prescription or by deed. If acquired by prescription, the acts and conduct of the parties for the required length of time gave birth to the easement, and by the same process of logic, it would seem that the unequivocal acts of the parties might also destroy. Indeed, it has been. held that a verbal agreement to release a mortgage is not within the statute of frauds. *Hemmings v. Doss,* 125 N. C., 400, 34 S. E., 511. In that case *Clark, J.,* said: "It is true that the evidence of the parol discharge of a written contract within the statute of frauds, or an equitable estoppel by matter *in pais,* must be "positive, unequivocal and inconsistent with the contract," and if left to the jury upon a denial in the answer, it must be with that instruction," etc. *Stevens v. Turlington,* 186 N. C., 191, 119 S. E., 210. A general statement of the proposition of law is found in 19 C. J., 949, as follows: "It is elementary that oral testimony is not admissible .to limit the legal effect of a deed, and that an easement cannot be extinguished or released by a mere unexecuted parol agreement.

Nevertheless the rule is well settled that a parol agreement between the owners of the dominant and servient tenements may operate to extinguish an easement whether created by grant or prescription, where such agreement has been executed by the owner of the servient tenement," etc. To the same tenor, is the statement of the law in R. C. L., Vol. 9, page 812, section 68. The author said: "An easement may be abandoned by unequivocal acts showing a clear intention to abandon and terminate the right, or it may be done by acts *in pais* without deed or other writing. The intention to abandon is the material question, and it may be proved by an infinite variety of acts. It is a question of fact to be ascertained from all the circumstances of the case," etc. See, also, annotation, *Trimble v. King,* 22 L. R. A. (N. S.), 880; *Hair v. Downing,* 96 N. C., 172, 2 S. E., 520.

In the case at bar the plaintiff testified that "in the spring of 1930 the defendant dammed up the said three ditches, and upon my cutting out the dams, defendant dammed them up again." The act of the defendant in filling up the ditches in reliance upon the verbal agreement is some evidence of the intention to abandon or relinquish the easement, and hence it was error to withdraw the case from the consideration of the jury.

New trial.